IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Stanford W. Grist, individually, by and through his attorney-in-fact Stacey Grist, and Stacey Grist, individually, <br><br> Plaintiffs <br><br> vs. <br><br> Jennifer Browning, Browning Geriatric Consulting LLC, Tracy Parsons, Priscilla Mickie Grist, Christopher Couchell, Kiki's Kare LLC d/b/a Comfort Keepers, Tyler McLeod, Adam Lee, Michael Bridges, Dan Collins, The Vanguard Group Inc., Cheryl Borum, O'Neil Rabon, Caroline York Grist Lyon, Leland Lyon, Jr., Clayton Jennings[1], <br><br> Defendants | Civil Action No.: <br><br> **COMPLAINT** <br> **(Jury Trial Demanded)** <br><br> <u>Action for Violations of the Organized</u> <br><br> Crime Control Act of 1970. Pub.L.No. <u>91-452, Title IX</u>, "Racketeer Influenced and Corrupt Organizations Act" ("RICO")(Codified at 18 U.S.C. **§§ 1961-1968**) And Common Law Claims |

---

[1] Defendants Clayton Jennings and O'Neil Rabon, in response to the notice letter sent by Plaintiffs' counsel, filed lawsuits against Plaintiffs' counsel and others in a reactionary but ill-informed stunt in which they doth protest too much, demonstrating not only their arrogance at having been called out for their illegal activity, but taking affirmative steps to offensively attempt to inhibit their victims from pursuing their legal rights by way of intimidation, which is further evidence of the predicate acts of Defendants Jennings and Rabon as set forth herein and the lack of remorse for his actions, as well as forecasting his inclination to continue to abuse future victims. *Ronald O'Neil Rabon v. Paul Hulsey et al*., Case No. 2024-CP-23-03236; Clayton *L. Jennings v. Paul Hulsey et.al.*, Case No. 2024-CP-23-03271 (filed May 24, 2024). Most recently, Defendant Browning and Browning Geriatric Consulting LLC have filed a lawsuit. *Jennifer L. Browning v. Paul Hulsey et al.,* Case No. 2024-CP-23-03730.

**<u>TABLE OF CONTENTS</u>**

I.    SUMMARY OF ACTION (THE SHAM PROBATE ENTERPRISE) ................4

II.    JURISDICTION ...........................................................................................6

III.    PARTIES ....................................................................................................6

IV.    STATEMENT OF THE CASE ..................................................................14

V.  RELEVANT PERIOD OF TIME .................................................................. 14

VI. SUMMARY OF SHAM PROBATE ENTERPRISE (SCHEME TO
    DECEIVE AND DEFRAUD) ...............................................................28

VII. DEFINITIONS ........................................................................................ 29

        A.  UNLAWFUL ACTIVITY .......................................................29

            1.   Mail and Wire Fraud 18 U.S.C. §§ 1341 and 1343 ......................29

            2.   Extortion S.C. Code § 16-17-640 ..................................................29

        B.  PATTERN...............................................................................30

VIII.   CLAIMS FOR RELIEF .......................................................................31
        FIRST CLAIM FOR RELIEF
        VIOLATIONS OF 18 U.S.C. § 1962 (c) .......................................31


        SECOND CLAIM FOR RELIEF
        VIOLATIONS OF 18 U.S.C. § 1962 (d), CONSPIRACY
        TO VIOLATE § 1962(c) ...............................................................33

THIRD CLAIM FOR RELIEF

VIOLATIONS OF 18 U.S.C. § 1962 (d), CONSPIRACY TO VIOLATE

§ 1962 (a) ........................................................................................34


FOURTH CLAIM FOR RELIEF

TORTIOUS INTERFERENCE WITH THE RIGHT TO INHERIT  ............35


FIFTH CLAIM FOR RELIEF

CIVIL CONSPIRACY  ...................................................................38


SIXTH CLAIM FOR RELIEF

FRAUD ........................................................................................39

SEVENTH CLAIM FOR RELIEF

NEGLIGENT MISREPRESENTATION  ........................................39

IX.    DEMAND FOR JURY TRIAL  ............................................................40

X.     PRAYER FOR RELIEF  ......................................................................41

Plaintiffs, complaining of the Defendants, and seeking legal and equitable relief as prayed for herein, would show unto this Honorable Court:

## I.    <u>SUMMARY OF ACTION</u>
The Sham Probate Enterprise

1.    This is an action brought pursuant to 18 U.S.C.  Section 1962 *et seq.* (hereafter referred to as "**RICO**") to recover legal damages, attorney's fees and costs and equitable remedies, as well as such other and further relief as the Court deems appropriate, for the cumulative actions of the Defendants (hereafter collectively referred to as the "**Collaborators**" as more specifically described herein) of which Plaintiffs (as defined below) are among the victims: a widespread, comprehensive, systematic, continuous, ongoing scheme to deceive and defraud them and others, as well as deprive Plaintiffs of their property through a long list of racketeering activities prohibited by **RICO.**  The liability of the **Collaborators** and those they conspired with is reflected in court filings, property transactions, witness interviews, bank records, trust documents, medical records, other professional records, depositions, hearing transcripts which demonstrate a clear pattern of ongoing racketeering activity by an association-in-fact enterprise involving various predicate acts executed by the **Collaborators** and others to deprive Plaintiffs of valuable property and rights.  These comprehensive, multiple and inter-related schemes to deceive and defraud are generally characterized by lawyers knowingly self-dealing while committing fraud in the creation or administration of probated estates, settlements, trust agreements, property transactions, some of which were purportedly authorized by court orders[2] for which the judicial officers

---

[2]  Some of the court "orders" in these and related actions appear to have been "signed" using a rubber stamp of a judicial official likely making the document void or voidable in the execution of each, which didn't slow down the **Collaborators** in their affirmative steps to harm the Plaintiffs and others.

involved do not enjoy any form of immunity, particularly when those judicial officers are, or in the exercise of reasonable care should be, aware of the ongoing pattern and scheme and take no steps to protect the victims, even assisting in the abuse of the victims. This undertaking is referred to herein as the **Sham Probate Enterprise**. During the execution of the **Sham Probate Enterprise**, in addition to appearing as lawyers in Probate matters, some of the Defendant **Collaborators** failed to disclose conflicts of interest and at least five (5) are currently engaged in extortion under South Carolina law but have engaged in other predicate acts in furtherance of the **Sham Probate Enterprise** and continue to do so. In this regard at least one (1) financial institution has willingly participated in the schemes along with health care workers and health care institutions that fraudulently created assessments and other fraudulent documentation to further their abuse of the rights of the victims including the Plaintiffs here. The Defendant **Collaborators** also conspired with others not yet identified herein and were aided and abetted by, as discovery may dictate, others not yet identified herein. The use by the **Sham Probate Enterprise Collaborators** of the court system to advance the racketeering scheme is particularly egregious as it victimized the entire judicial system, impacts the administration of justice across the board and undermines the integrity of the state court legal and judicial process for everyone.

2. Each of the Defendant **Collaborators** and other parties associated with or participated in the affairs of the **Sham Probate Enterprise** as defined herein, in that they conducted or participated directly or indirectly in the operation of the **Sham Probate Enterprise** through a "pattern of racketeering activity" within 18 U.S.C. §1961(1) and (5) and §1962(c), *to wit*: multiple, repeated, and continuous violation of 18 U.S.C. §1341 (mail fraud), 18 U.S.C. §1343 (wire fraud) and S.C. Code §16-17-640 (extortion).

5

3.    The pattern of racketeering conduct includes multiple mailings, wire transmissions and acts causing the Plaintiffs to lose assets that belonged to them and to suffer unwarranted and unwanted restrictions on their liberty.   The Defendant **Collaborators** and other related persons or entities conducted themselves in a manner directed toward the Plaintiffs and their heirs and estates in concert acting solely on behalf of the **Sham Probate Enterprise** which caused and continues to cause Plaintiffs and their heirs and estates significant harm.

## II.    JURISDICTION

4.    This Court has jurisdiction under 18 U.S.C. § 1964(a) and (c) (**RICO**); 28 U.S.C. § 1331 (federal question).   Supplemental jurisdiction under 28 U.S.C. § 1367 exists as to those claims that are so related to the federal claims in that they form part of the same case or controversy.   The matters in controversy arise under the Constitution, treaties and laws of the United States, including those regulating commerce.

5.    Venue is proper in this Court under 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claims occurred in this district. The ends of justice are served because joint trials for claims against related parties conserve resources and avoid inconsistent verdicts.

## III.    PARTIES

6.    Defendant **Collaborators** coordinated  with one another  to create and operate a  "**Sham Probate Enterprise"** which constituted an association-in-fact enterprise which involved using fraud and abuse of the legal system to take advantage of persons (hereafter referred to as "victims") to divert some or all of those victims' assets and/or income and to fraudulently

6

charge unneeded and unwanted professional fees to be paid to the **Collaborators**, or some

of them, and others, sometimes in conjunction with relatives of the victims who had their

own private agenda and desire to take advantage of the victims, under circumstances in which

such professional services were intended to and did handicap the ability of the victims to

self-determination, liberty and freedom, and destroyed the victims' abilities to protect their

assets and/or spend them as they chose or as they had directed.

7.     The **Sham Probate Enterprise** relied upon interaction with and alleged oversight by the

Greenville County Probate Court (hereafter "the Probate court") to initiate and facilitate the

**Collaborators'** raids upon the assets and income of the victims, to vitiate and neutralize the

stated will of the victims, to the detriment of the victims and to enrich the **Collaborators**, all

of whom operate for profit and all of whom profited from their acts and omissions as set

forth herein, to the detriment of the victims.  This is the first of several similar cases that will

be filed for the benefit of other victims who were also harmed and damaged irrevocably by

the actions in the **Sham Probate Enterprise**.

8.     On information and belief, there are multiple victims of these **Collaborators** and on

information and belief the **Sham Probate Enterprise** continues at the present, with the

Probate court continuing to assist the **Sham Probate Enterprise,** with some of the named

Defendant **Collaborators** and others still entrusted with responsibility to provide service to

current victims, who will surely suffer as these Plaintiffs have.[3]

---

[3]  On information and belief, named Defendant **Collaborators** were placed on notice of their illegal activities by letter dated May 17, 2024, which was sent by certified mail to all named Defendant **Collaborators** and to some via email, but on information and belief, the named Defendant **Collaborators** have continued their unlawful **Sham Probate Enterprise**, victimizing even more members of the Greenville community in the month since the Defendant **Collaborators** were alerted that the illegal enterprise had been uncovered and that they would be required to answer for their wrongdoing. To date, only one of the named Defendant **Collaborators** has made tentative contact to Plaintiffs' counsel to cooperate and disclose details regarding the **Sham Probate Enterprise**.

9.  On information and belief, Defendant **Collaborator** Jennifer **Browning** is an individual who resides and conducts business in and around the County of Greenville, State of South Carolina and whose conduct was fraudulent and actionable. On multiple occasions, including actions involving these Plaintiffs, Defendant **Collaborator** Jennifer **Browning** has been appointed by the Probate court to serve in a representative capacity for various victims, among them the Plaintiffs named herein and has used those appointments to enrich herself to the detriment of the victim, including these Plaintiffs.

10. On information and belief, Defendant **Collaborator** Jennifer **Browning** is the primary owner of a limited liability corporation organized and existing under the laws of the State of South Carolina called **Browning Geriatric Consulting LLC** which was used as an instrumentality of fraudulent activity and was not within the scope of judicial oversight by virtue of the manipulation of its corporate structure to receive professional fees while not appointed by any Court. On information and belief, Defendant **Collaborator Browning Geriatric Consulting LLC** has never been appointed to serve in a representative capacity by the Probate court, but under the guise of appointments of Defendant **Collaborator** Jennifer **Browning**, Defendant **Collaborator Browning Geriatric Consulting LLC** has taken advantage of the victims, including Plaintiffs, to its enrichment without ever having been court-appointed or subjected to judicial oversight.

11. On information and belief, Defendant **Collaborator** Tracy **Parsons** is a citizen and resident of the County of Greenville, who has on multiple occasions been appointed, designated or retained, and was at all times paid for services from the assets or income of affected victims, to assist in the **Sham Probate Enterprise** by submitting reports and statements, some of which were false, misleading and calculated to contribute to the continuing nature of the

**Sham Probate Enterprise** involving these Plaintiffs, and others not yet named, and who, on information and belief, participated in  fraudulent conduct  by furthering the **Sham Probate Enterprise**, and yet despite that she continued to cooperate and actively participate in the **Sham Probate Enterprise** and to further its efforts and goals and to enrich herself personally.

12.   On information and belief, Defendant **Collaborator** Priscilla Mickie **Grist** is one of the adult daughters of Plaintiff Stanford W. **Grist**, is a citizen and individual of the County of Greenville, State of South Carolina, and has at all relevant time periods assisted in the facilitation and implementation of the **Sham Probate Enterprise** to enrich herself and for the express purpose of harming the Plaintiffs and acting contrary to the wishes of Plaintiff Stanford W. **Grist**, and on all relevant occasions, she was a client or agent of other **Collaborators**, some of whom are named as Defendant **Collaborators** herein, who participated in the **Sham Probate Enterprise** and  provided false and fraudulent information to the Probate court in order to further the **Sham Probate Enterprise** and her own personal interests and that of others.

13.   Upon information and belief, Christopher **Couchell** is the owner of Defendant **Collaborator** Kiki's Care, LLC, is a citizen and individual of the County of Greenville, State of South Carolina, and has at all relevant time periods assisted in the facilitation and implementation of the **Sham Probate Enterprise.**

14.   On information and belief, Christopher **Couchell** is the primary owner of a limited liability corporation organized and existing under the laws of the State of South called **Kiki's Care, LLC,** doing business as **Comfort Keepers.**   Upon information and belief, Defendant **Collaborator KiKi's Care, LLC** has never been appointed to serve in a representative

9

capacity by the Probate court, but has provided daily care services under the guise of Jennifer **Browning's** probate appointments, has taken advantage of the victims to its enrichment without ever having been court-appointed or overseen by judicial oversight.

15.   Upon information and belief, Defendant **Collaborator** Tyler **McLeod** is a lawyer and a citizen of the County of Greenville, State of South Carolina, who has at all relevant time periods assisted in the facilitation and implementation of the **Sham Probate Enterprise** to enrich himself and for the  purposes of harming the Plaintiffs and acting contrary to the wishes of Plaintiff Stanford W. **Grist**, and on relevant occasions worked in concert with other **Collaborators**, some of whom are named as Defendant **Collaborators** herein, who participated in the **Sham Probate Enterprise. McLeod** also represented Charlotte Grist before the Probate Court.

16.   Upon information and belief, Defendant **Collaborator** Michael **Bridges** is a lawyer and a citizen of the County of Greenville, State of South Carolina, and has at all relevant time periods assisted in the facilitation and implementation of the **Sham Probate Enterprise**  to enrich himself  while acting contrary to the wishes of Plaintiff Stanford W. **Grist**, and on relevant occasions worked in concert with other **Collaborators**, some of whom are named as Defendant **Collaborators** herein, who participated in the **Sham Probate Enterprise. Bridges** was originally engaged by Dr. **Grist** to defend against the actions brought by Defendant **Collaborators** Priscilla Mickie **Grist** and Caroline **Lyon**. **Bridges** also represented Jennifer **Browning** in contemporaneous cases involving other parties before the same court without disclosing the representation to Dr. **Grist**.

17.   Upon information and belief, Defendant **Collaborator** Adam **Lee** is a lawyer and a citizen of the County of Greenville, State of South Carolina, and has at all relevant time periods

assisted in the facilitation and implementation of the **Sham Probate Enterprise** to enrich himself while acting contrary to the wishes of Plaintiff Stanford W. **Grist**, and on relevant occasions worked in concert with other **Collaborators**, some of whom are named as Defendant **Collaborators** herein, who participated in the **Sham Probate Enterprise. Lee** was originally engaged by Dr. Grist to defend against the actions brought by Defendant **Collaborators** Priscilla Mickie **Grist** and Caroline **Lyon**, and purported to represent the interests of Dr. Grist while actively adverse to him. Defendant **Collaborator Lee also** represented Jennifer **Browning** in contemporaneous cases before the same court without disclosing the representation to Dr. **Grist** that he was acting contrary to Dr. Grist's interests.

18.  Upon information and belief, Defendant **Collaborator** Daniel **Collins** is a lawyer and citizen of the County of Greenville, State of South Carolina, and has at all relevant time periods assisted in the facilitation and implementation of the **Sham Probate Enterprise** to enrich himself while acting  contrary to the wishes of Plaintiff Stanford W. **Grist**, and on relevant occasions worked in concert with other **Collaborators**, some of whom are named as Defendant **Collaborators** herein, who participated in the **Sham Probate Enterprise. Collins** represented Dr. **Grist** as his estate lawyer for years without disclosing that he contemporaneously represented Defendant **Collaborators** Leyland **Lyon** and Caroline **Lyon** adversely to Dr. **Grist's** interest, or that he had previously retained Defendant **Collaborator** Jennifer **Browning**'s services to get a "finding of incapacity" or as professional guardian in a litany of cases, including one presently pending in another county.

19. Upon information and belief, Defendant **Collaborator The Vanguard Group, Inc,** (hereafter "Vanguard Group") is a corporation organized and existing under the laws of the State of Pennsylvania, with location in Greenville County, State of South Carolina**,** which

11

aided Defendant **Collaborators** Leyland **Lyon** and Caroline **Lyon** in the fraudulent control of Dr. **Grist**'s assets while being compensated agents of Dr. **Grist**.  On information and belief, **Vanguard Group** is a financial institution that offered wealth management services to Dr. **Grist** and to **Collaborators**, some of which are Defendant **Collaborators** herein, and to Plaintiffs and facilitated and participated in the **Sham Probate Enterprise.**

20. Upon information and belief, Defendant **Collaborator** Cheryl **Borum** is a citizen and individual of the County of Greenville, State of South Carolina, and has at all relevant time periods assisted in the facilitation and implementation of the **Sham Probate Enterprise** to enrich herself while acting contrary to the wishes of Plaintiff Stanford W. **Grist**, and on relevant occasions worked in concert with other **Collaborators**, some of whom are named as Defendant **Collaborators** herein, who participated in the **Sham Probate Enterprise.** On information and belief, Defendant **Collaborator Borum** acted as Dr. **Grist's** CPA while working adversely to Dr. **Grist'**s interest with Defendant **Collaborators** Leyland **Lyon** and Caroline **Lyon.**

21. Upon information and belief, Defendant **Collaborator** O'Neil **Rabon** is a lawyer and a citizen of the County of Greenville, State of South Carolina, and has at all relevant time periods assisted in the facilitation and implementation of the **Sham Probate Enterprise** to enrich himself while acting contrary to the wishes of Plaintiff Stanford W. **Grist**, and on relevant occasions worked in concert with other **Collaborators**, some of whom are named as Defendant **Collaborators** herein, who participated in the **Sham Probate Enterprise. Rabon** represented **Collaborators** Priscilla Mickie **Grist,** Leyland **Lyon, and** Caroline **Lyon.  Rabon** also represented Defendant **Collaborator** Jennifer **Browning** in numerous

cases and also appeared regularly in *ex parte* proceedings seeking her appointment in multiple cases before the Probate court, indicating his tendency to repeat his bad actions.

22. Upon information and belief, Defendant **Collaborator** Leyland **Lyon** is a citizen and individual of the County of Greenville, State of South Carolina, and has at all relevant time periods assisted in the facilitation and implementation of the **Sham Probate Enterprise** to enrich himself while acting contrary to the wishes of Plaintiff Stanford W. **Grist**, and on relevant occasions worked in concert with other **Collaborators**, some of whom are named as Defendant **Collaborators** herein, who participated in the **Sham Probate Enterprise.**

23. Upon information and belief, Defendant **Collaborator** Caroline **Lyon** is a citizen and individual of the County of Greenville, State of South Carolina, and has at all relevant time periods assisted in the facilitation and implementation of the **Sham Probate Enterprise** to enrich herself while acting contrary to the wishes of Plaintiff Stanford W. **Grist**, and on relevant occasions worked in concert with other **Collaborators**, some of whom are named as Defendant **Collaborators** herein, who participated in the **Sham Probate Enterprise.**

24. Upon information and belief, Defendant **Collaborator** Clayton **Jennings** is a lawyer, judge and citizen of the County of Greenville, State of South Carolina, and has at all relevant time periods assisted in the facilitation and implementation of the **Sham Probate Enterprise** and on relevant occasions worked in concert with other **Collaborators**, some of whom are named as Defendant **Collaborators** herein, who participated in the **Sham Probate Enterprise. Jennings** represented Jennifer **Browning** and **Browning Geriatric,** LLC in other court proceedings while acting as Judge in Dr**. Grist's** case without disclosing the same to Plaintiffs.

## IV.    STATEMENT OF THE CASE

25.  Each and every allegation set forth above is realleged and reasserted as if set forth verbatim herein.

26.  The Defendant **Collaborators** created the **Sham Probate Enterprise** as an association-in-fact enterprise which operated through a pattern of racketeering conduct in order to deceive and defraud the Plaintiffs and others similarly situated.

## V.    RELEVANT PERIODS OF TIME

27.  Between 2005 to 2020, Dr. Stanford W. **Grist** took extensive steps to ensure that the manner in which he wished for his estate to be distributed upon his death was properly documented and not left open to interpretation. More specifically, Dr. Grist was intentional about establishing certain safeguards to prevent deviation from his wishes in the event of mental incapacity.

28.  In 2005, Dr. **Grist** executed his revocable Trust. Dr. **Grist** named himself as the Trustee of his Trust and upon his incapacity or death, Defendant **Collaborator** Leyland **Lyon** was to serve as the successor Trustee. On the same day, Dr. **Grist** executed a General Durable Power of Attorney naming Defendant **Collaborator** Leyland **Lyon** as his Attorney-In-Fact.

29.  Over time, however, Dr. **Grist** began reevaluating his succession plan, and upon discovering that thousands upon thousands of dollars were misappropriated by Defendant **Collaborators** Leland **Lyon** and Caroline Grist **Lyon** from the Veterinary Business, Dr. **Grist** elected to amend his corporate documents, as well as his estate documents, to remove Defendant **Collaborators** Leyland **Lyon** and Caroline Grist **Lyon** as successor Trustees and to name

14

Stacey **Grist** ("Plaintiff") as an officer of the Business and as successor Trustee under the Trust.

30. Initially Dr. **Grist** went to his prior attorney, Defendant **Collaborator** Daniel **Collins**, to request that he draft these changes. Upon arriving at Defendant Collaborator **Collins**' office, Dr. **Grist** found himself in a meeting with Defendant **Collaborators Collins,** Leyland **Lyon** and Caroline **Lyon**. Dr. **Grist** then learned that Collins also represented Defendant **Collaborators** Leyland **Lyon** and Caroline **Lyon** and had for years without disclosing the same to Dr. **Grist.** Dr. **Grist** was forthcoming in the presence of Leyland Lyon and Caroline Grist **Lyon** regarding his reasons for making the changes to his estate documents business organization. However, Dr. **Grist** was trapped in what was supposed to be a meeting with an attorney to provide legal services to him, and instead was put under pressure by Defendant **Collaborators Collins**, Leland **Lyon** and Caroline **Lyon** to favor them in his estate planning**.**

31. Defendant **Collaborator** Collins originally agreed to make the requested changes, and Dr. **Grist** left Collins' office believing that the changes would be made pursuant to his request. Later, after a conversation with Defendant **Collaborator** Cheryl **Borum**, Dr. **Grist's** CPA, who had been originally recommended by Defendant **Collaborator Collins** and who had worked with Leyland **Lyon** to set up a complicated web of bank accounts to hide the money trail from the Veterinary Practice, Defendant **Collaborator Collins** called Dr. **Grist** to demand that he submit to a mental evaluation to be arranged by Defendant **Collaborator Browning** the next morning before Defendant **Collaborator Collins** would make the changes removing his clients Defendant **Collaborators** Leyland **Lyon** and Caroline Grist **Lyon**. Upon information and belief, Defendant **Collaborators,** as members of the **Sham Probate Enterprise,** sought to conceal the extent of the fraud already carried out against Dr.

**Grist** and to secure further control over his extensive assets, through a sham finding of incapacity.

32. On or about February 19, 2019, after firing Defendant **Collaborator Collins** for what he believed was **Collins**' conflict of interest, Dr. **Grist** went to a well-known, and well-respected firm in Greenville, South Carolina to amend his Durable Power of Attorney (the "POA") to reflect his desire that his daughter, Plaintiff Stacey **Grist**, serve as his attorney-in-fact upon the eventuality of his incapacity (springing powers defined in the POA). Article IX, Section 3 of the Durable Power of Attorney specifically nominated "…Agent as Conservator and Guardian for Principal. To the extent that I am permitted by law to do so, I herewith nominate and appoint my Agent to serve as my guardian, conservator, and/or in any similar representative capacity, if such an appointment is necessary."

33. On or about May 1, 2019, Dr. **Grist** went back to the same law firm in Greenville, South Carolina to amend his Trust to reflect his desire that Plaintiff Stacey **Grist** serve as his successor Trustee. The drafting attorney very astutely elected to execute an affidavit stating that Dr. **Grist** had capacity to execute such documents. In addition to this safeguard, the drafting attorney also thought it necessary for Dr. **Grist** to submit to an independent medical evaluation by a disinterested third-party, which confirmed the drafting attorney's belief that Dr. Grist was of sound mind.  On information and belief, Dr. **Grist** revealed to the lawyer his suspicions of the actions that might be taken by various members of his family to disrupt his estate planning,  how important it was to him that Stacey **Grist** be empowered to act on his behalf in the event of his disability,  and the lawyer's astute handling of the matter was for this very reason.

16

34.  At all times since the May 1, 2019, amendment, Plaintiff Stacey **Grist** served as Dr. **Grist's** attorney-in-fact upon any determination of incapacity and as successor trustee, as well as an active participant in the operation of the Business.

35.  It was during this time that Dr. **Grist** also became increasingly aware of Defendant **Collaborators** Leyland **Lyon** and Caroline Grist **Lyon**'s continued efforts to interfere with his control of his assets, specifically assets held by Defendant **Collaborator Vanguard Group, Inc.** Dr. **Grist** made repeated efforts to gain control of his accounts but was faced with continuous unlawful blocks by Defendant **Collaborator Vanguard's** representatives assigned to his accounts. On information and belief, Defendant **Collaborator** Leyland **Lyon** had changed all passwords on Dr. **Grist's** accounts and Defendant **Collaborator Vanguard** continued to assist Defendant **Collaborator** Leland **Lyon** to keep Dr. **Grist's** assets from him, even though Dr**. Grist's** name was on his accounts, his social security number was on them, and his money was in them. Upon information and belief, Defendant **Collaborator Vanguard Group** worked in concert with Defendant **Collaborator** Leland **Lyon** to block Dr. Grist's access, online and in person, to deprive Dr. **Grist** of the ability to move his own money, and to deny his participation in the management of his funds. It was only after months and months of costly efforts and with the assistance of another financial institution, that Plaintiff Stacey **Grist** and Dr. **Grist** gained control of his remaining assets.

36.  In the fall of 2019 through the first of 2020, Dr. **Grist** was the subject of an anonymous complaint filed with the South Carolina Department of Labor, Licensing and Regulation, questioning his capacity to act as a Doctor of Veterinary Medicine in supervising the operation of his veterinary clinics. Upon information and belief, this was yet another effort by Defendant **Collaborators** or their agents to gain control of him and of his assets through

17

a finding of incapacity that would prevent him from working and managing the money flowing through his businesses.  Throughout the investigation over months, another well-respected attorney represented Dr. Grist before the state licensing board.  Dr. Grist was subjected to extensive interviews, with the ultimate finding of the board being announced via a dismissal of the complaint in early 2020 finding that the complaint of incapacity was unfounded.

37. This latest effort to gain control of him and his assets and to remove him from his clinics prompted Dr. **Grist** to go to another highly regarded law firm located in Greenville, South Carolina to make further amendments to his Trust. This law firm had previously done extensive legal work for Dr. **Grist** related to his businesses over the years and he knew the attorney well and trusted him.  The May 13, 2020 amendment to the Trust, made within months of the licensing board finding him competent and fit to practice veterinary medicine, revised how the Trust would be distributed upon his death, while leaving all other provisions, including the appointment of Plaintiff Stacey **Grist** as his successor trustee, in place.

38. The Trust originally provided that the beneficiaries to the Trust, Defendant **Collaborator** Priscilla Mickie **Grist**, Plaintiff Stacey Grist, and another daughter, **Charlotte Grist,** would receive equal shares of the Trust assets *per stirpes.*

39. In the May 13, 2020 amendment, Dr. **Grist** divested any ownership interest Defendant **Collaborator** Priscilla Mickie **Grist** had in Stanford Grist Veterinary Services, LLC, giving immediate ownership of the same to Plaintiff Stacey **Grist**.   The amendment also took away Mickie **Grist**'s interest in Chestnut Ridge Farm LLC, and Hilly Street LLC (collectively referred to as the "Companies"), and left Defendant **Collaborator** Priscilla Mickie **Grist** instead to receive all stocks and bonds being held in Trust. Dr. **Grist** then split ownership of

the Companies equally between Plaintiff Stacey **Grist** and his daughter Charlotte **Grist,** giving immediate ownership of Stanford Grist Veterinary Services, LLC to Plaintiff Stacey **Grist** and giving Charlotte **Grist** her share of the Companies upon his death.[1]

40. The drafter of the May 13, 2020, amendment also had Dr. **Grist** submit to an independent medical examination by a disinterested third-party. Both the physician and the drafting attorney found Dr. **Grist** to be of sound mind. Dr. **Grist** informed Defendant **Collaborator** Priscilla Mickie **Grist** of the changes and invited her to meet with the attorney as well to fully understand the change. After learning of this change, Defendant **Collaborator** Pricilla Mickie **Grist** subsequently submitted her formal resignation as Dr. **Grist**'s Healthcare Power of Attorney expressly stating as her reason in the body of the resignation that she no longer wanted this responsibility.

41. Immediately following her resignation as HCPOA, Defendant **Collaborator** Priscilla Mickie **Grist** set about to take Dr. **Grist** to an unplanned doctor's appointment to have "papers signed" with no explanation.   On June 26, 2020, Dr. **Grist** called his ex-wife, who he remains very close to, to ask for her help because Defendant **Collaborator** Priscilla Mickie **Grist** was trying to force him into the car to take him to a doctor appointment.  Dr.  **Grist's** ex-wife came to his aid and called the police to stop Defendant **Collaborator** Priscilla Mickie **Grist** and a man who was assisting her from their attempted kidnapping of Dr. **Grist**. A police report was issued detailing the concern by Dr. **Grist** and his ex-wife had that Defendant **Collaborator** Priscilla Mickie **Grist** was using this tactic as a means to get access to Dr. **Grist**'s money, as she was being pursued by debt collectors. Again, this was after she previously resigned as his HCPOA.

42. Approximately two months after the May 13, 2020 amendment to the Trust eliminating Defendant **Collaborator** Priscilla Mickie **Grist**'s interest in the businesses, Defendant **Collaborators** Priscilla Mickie Grist and Caroline Grist, aided by Defendant **Collaborators Browning, Collins,** and **Rabon,** put into action their scheme calculated to circumvent Dr. **Grist**'s wishes in an effort to conceal Defendant **Collaborators** Leyland **Lyon** and Caroline Grist **Lyon**'s prior embezzlement perpetrated with the help of Defendant **Collaborators Collins** and **Borum** and to secure what they respectively believed to be a more favorable distribution of Trust assets to Defendant **Collaborator** Priscilla Mickie **Grist** upon the incapacity or death of Dr. **Grist** than what his carefully drafted and executed estate plan provided.

43. On July 9, 2020, in direct violation of the valid and enforceable Durable Power of Attorney, Defendant **Collaborator** O'Neil **Rabon,** had Defendant **Collaborator** Priscilla Mickie **Grist** execute and submit an *ex-parte* petition to the Greenville County Probate Court seeking to be appointed guardian over Dr. **Grist** while specifically and falsely noting in the petition that Dr. Grist did not previously designate a guardian in his estate documents. At the same time Defendant **Collaborator Browning** was appointed as guardian ad litem without disclosing her role just over a year earlier in Defendant **Collaborators Collins, Borum, Leyland, and Caroline's** plan to have Dr. **Grist** declared incapacitated through a sham mental evaluation.

44. Defendant **Collaborator** Caroline **Grist** then filed a subsequent conservatorship petition based on **vague,** baseless and false allegations that Plaintiff Stacey **Grist** was improperly handling Dr. **Grist**'s business and exercising undue influence in the execution of the POA and the amendments to the Trust with absolutely no factual basis.  Defendant **Collaborator**

Caroline **Grist** also falsely stated to the Probate Court that Dr. **Grist** had no Trustee with full knowledge that his Trust provided for a successor Trustee upon his incapacity.

45.    These baseless allegations were dispelled after Plaintiff Stacey **Grist** voluntarily submitted to a forensic accounting by an independent third party who praised her handling of the business in her final report.

46.    The improper filing seeking Defendant **Collaborator** Priscilla Mickie **Grist**'s appointment to serve as Dr. **Grist**'s guardian resulted in a false determination by the Probate Court that Dr. **Grist** was in fact mentally incapacitated, despite recent prior findings otherwise. Following this determination, Defendant **Collaborator** Priscilla Mickie **Grist** was replaced as guardian by Defendant **Collaborator** Tracy **Parsons** with Defendant **Collaborator** Jennifer **Browning** serving as guardian ad litem.

47.    Dr. **Grist** had personally retained Defendant **Collaborators** Adam **Lee** and Mike **Bridges** to serve as his counsel to oppose the appointment of a guardian prior to the temporary hearing; however, unbeknownst to Dr. **Grist**, Defendant **Collaborators** Adam Lee and Mike Bridges  intentionally hid  their true loyalties from Dr. **Grist** and instead,  the Defendant **Collaborators** Adam Lee and Mike Bridges, whom Dr. Grist had hired to protect him from Defendant **Collaborators Parsons** and **Browning**, were themselves representing **Browning** in another guardianship matter then pending at the same time before the same court.

48.    Also unknown to Plaintiff Stacey **Grist** and to Dr. **Grist** was the fact that Defendant **Collaborator** Clayton **Jennings**, the judge who approved Defendant **Collaborator Browning's** fees to be paid from Dr. **Grist's** assets against his wishes, was himself serving as **Browning's** lawyer in a guardianship matter pending in Laurens County at the same time he was presiding over **Browning's** conduct in Dr. **Grist's** case in Greenville County.

49. The family all knew that Dr. **Grist** expressly instructed that in the event of incapacity, Plaintiff Stacey **Grist** was to serve as his guardian and conservator specifically in order to avoid and prevent any such Probate proceedings, so this proceeding was malicious in that Dr. **Grist** had just recently been determined fit to practice veterinary medicine and it was expressly contrary to Dr. **Grist** written instructions.  Even daughter Charlotte **Grist** knew of her father's wishes, but had hired Defendant **Collaborator** Tyler **McLeod** as her counsel who worked closely with Defendant **Collaborators Rabon, Lee, Bridges, Browning** and **Parsons** to get and keep control of Dr. **Grist** and his considerable assets contrary to the law and outside of the proceeding then pending before the court.

50. Within the coming months it became clear that the guardianship and **conservatorship** proceedings, which should have only affected Dr. **Grist**'s estate assets, were intended to and served as a vehicle to gain control over Trust assets and to force a modification to the terms of the Trust to give Defendant **Collaborator** Priscilla Mickie **Grist** a third of Dr. **Grist**'s assets, including the businesses which should have otherwise been beyond the reach of the guardianship and conservatorship action, and to fund an endless flow of money to the **Sham Probate Enterprise**.  The Defendant **Collaborators'** motives were on full display during a mediation of the guardianship and conservatorship case.  They used efforts to resolve the guardianship and conservatorship proceeding pending against Dr. **Grist,** to instead, through the use of tactics of extortion in the form of pressure and threats of further future damage, to force Plaintiff Stacey **Grist** to settle according to their wishes and hand over control Dr. **Grist's** assets to them.  Defendant **Collaborators Rabon**, **Bridges**, **Lee,** and **McLeod** all worked furiously to completely take apart Dr. **Grist**'s legitimate estate documents, including

his Trust and the Companies, to get control of everything for the benefit of the **Sham Probate Enterprise** and for the benefit of Defendant **Collaborator** Priscilla Mickie **Grist.**

51.   Defendant **Collaborators'** proposal, which was shared with non-parties including Defendant **Collaborators Browning** and **Parsons,** over the course of negotiations, lobbied for the appointment of Defendant **Collaborator Parsons** as Dr. **Grist's** permanent guardian, in complete disregard for Dr. **Grist**'s express directives, provided for the liquidation of Stanford Grist Veterinary Services immediately using the **Collaborators'** chosen business broker, provided for payment of all **Collaborators'** fees, and all other professional fees from Dr. **Grist**'s assets, and provided for any remaining assets still owned at Dr. **Grist**'s death to be divided equally between Priscilla Mickie **Grist**, Charlotte Grist, and Plaintiff Stacey **Grist,** all contrary to Dr. **Grist's** expressed wishes.

52.   At a subsequent hearing on the temporary guardianship, Defendant **Collaborator Browning** was appointed as Guardian ad litem.  After her appointment she had direct contact with Defendant **Collaborator** Priscilla Mickie **Grist** and/or her counsel on no less than thirty-four (34) separate occasions, while Plaintiff Stacey **Grist**, as Trustee and Power of Attorney, was only contacted twice.

53.   Upon removal of Defendant **Collaborator** Priscilla Mickie **Grist** as temporary guardian, the Probate court appointed Defendant **Collaborator** Tracy **Parsons** who was tasked with ensuring Dr. **Grist**'s safety and to act in his best interest.

54.   In her capacity as guardian, Defendant **Collaborator** Tracy **Parsons**, working with Defendant **Collaborator** Browning, arranged with Defendant **Collaborator Kiki's Kare LLC**  d/b/a Comfort Keepers to provide 24 hours a day, 7 days a week, 365 days a year in-home health care for Dr. **Grist**. However, despite Defendant **Collaborator Parsons'**

23

"hiring" of Defendant **Collaborator Kiki's Kare, LLC** d/b/a Comfort Keepers, she required Plaintiff Stacey **Grist,** to sign the contract in her capacity as Dr. **Grist's** Power of Attorney. This is especially troubling because while the Defendant **Collaborators** actively sought to have the Power of Attorney deemed invalid in court, they required Plaintiff Stacey **Grist** to sign contracts and checks under the guise of a valid court order.

55. Dr. Grist's **Trust** bore the entire financial responsibility of this decision by Defendant **Collaborator** Tracy **Parsons.**

56. Defendant **Collaborator** Tracy **Parsons** went to great lengths to isolate Dr. **Grist** and prevent those who love him most, including Plaintiff Stacey **Grist,** from visiting.

57. Defendant **Collaborator Comfort Keepers** has been openly, and seemingly intentionally, derelict in its duties to Dr. **Grist** which is evidenced by instances of Dr. **Grist** being over medicated with sedating medications, exploited, and physically and sexually assaulted.

58. In fact, after having observed instances of inappropriate conduct by Defendant **Collaborator Comfort Keepers'** employee(s) with Dr. **Grist,** Plaintiff Stacey **Grist** demanded an investigation be conducted.

59. In the interim, on or about April 7, 2022, a hearing was conducted to determine whether Defendant **Collaborator** Tracy **Parson's** guardianship would be extended at which time, having seen what Defendant **Collaborator Parsons'** chosen in-home care was capable of, Plaintiffs openly objected to the same.

60. In support of Defendant **Collaborator** Jennifer **Browning's** belief that Defendant **Collaborator** Tracy **Parson's** guardianship needed to be extended, Defendant **Collaborator** Jennifer **Browning** presented the Court with an email dated March 25, 2022, approximately two weeks before the hearing which sought to remove Defendant **Collaborator** Tracy

24

**Parsons**, which purports to be an email from Chris Couchell of Defendant **Collaborator Comfort Keepers**. In this correspondence Mr. Couchell attempts to provide evidence in support of Defendant **Collaborator Comfort Keepers'** ongoing care, citing that Dr. **Grist** has wielded knives, has previously made threats to employees, and has also threatened self-harm.

61. In further support of her contention that Defendant **Collaborator** Tracy **Parsons'** guardianship should be extended, Ms. Browning submitted a letter to the court which referenced alleged numerous falls that Dr. **Grist** had suffered.

62. Armed with these "facts," most of which were false and known to Defendant **Collaborator** Tracy **Parsons** and Defendant **Collaborator** Jennifer **Browning** to be false**,** the Court, with Defendant **Collaborator** Clayton **Jennings** serving as Judge in this instance without disclosing his representation of Defendant **Collaborator Browning** in other matters, considered Defendant **Collaborator Browning's** recommendations, and extended Defendant **Collaborator** Tracy **Parsons'** guardianship over Plaintiff Stacey **Grist's** objections. Shockingly, Defendant **Collaborators** Adam **Lee** and Mike **Bridges**, purportedly acting as counsel for Dr. **Grist**, did not object to the extension, and again did not disclose to Dr. **Grist** or Plaintiff Stacey **Grist** that they also were contemporaneously representing Defendant **Collaborator Browning** in another guardianship matter.

63. Alarmingly, upon Plaintiff Stacey **Grist's** receipt of the records from Defendant **Collaborator Comfort Keepers**, obtained via subpoena, it became abundantly clear that none of the conduct noted by Defendant **Collaborator** Jennifer **Browning** actually occurred, but rather, was completely fabricated.  These fabricated facts, facilitated by numerous Defendant **Collaborators** named herein, and submitted to the Probate court by other

Defendant **Collaborators**, contributed significantly to the continued harm being perpetrated upon Plaintiff Dr. **Grist**.

64.  Plaintiff Stacey Grist was also made aware by Dr. **Grist** of sexual abuse by an employee of Defendant **Collaborator** Comfort Keepers. Plaintiff Stacey **Grist** reported the same to all parties. A video was reviewed by all and the Defendant **Collaborator** Tracy **Parson's** falsely determined that no such abuse happened based on what could be seen. It was never revealed that any further evidence existed regarding the incident. Plaintiff Stacey **Grist** only recently discovered that an internal investigation by Defendant **Collaborators Comfort Keepers** and **Tracy Parsons** had revealed that **Comfort Keepers** employee Kerry Burnett McCreary admitted as a part of the investigation that she had performed numerous sexual acts on Dr. **Grist**, including, upon information and belief, sexual intercourse. Furthermore, and even more alarming, is the fact that these findings were reported to Dr. **Grist's** purported attorneys, Defendants **Collaborators Bridges** and **Lee**, as well as to Defendant **Collaborator Browning** at a meeting at Defendant **Collaborators Bridges'** and **Lee's** office. None of them ever reported the findings or the fact that there was an admission of wrongdoing to Plaintiff Stacey **Grist**, to the Court, or to law enforcement. At this meeting concerning the abuse suffered by **Dr. Grist** at the hands of and under the oversight of Defendant **Collaborators** Tracy **Parsons** and Jennifer **Browning**, Defendant **Collaborators Lee** and **Bridges**, under the guise of representing Dr. **Grist** in this matter, actually protected fellow **Collaborators Browning** and **Parsons** and ensured the continuation of the **Sham Probate Enterprise** and the continuing harm to Dr. **Grist**.

65.  These verified instances of sexual exploitation were included in the internal investigation notes which also, shockingly, referenced Defendant **Collaborator** Tracy **Parsons'** belief that

it was best to "let a sleeping dog sleep" as it related to reporting the sexual abuse of Dr. Grist by the employee of Defendant **Collaborator Comfort Keepers**. Because of this belief, Defendant **Collaborator** Tracy **Parsons** failed to report the same to the Court or any policing agency. It is shocking that all of this took place behind the scenes and that an actual admission was obtained regarding the sexual abuse suffered by Dr. **Grist** at the hands of Defendant **Collaborator** Tracy **Parson**'s hired caregivers and Defendant **Collaborator** Tracy **Parsons, Browning,** or Dr**. Grist's** own lawyers**,** Defendants **Collaborators Lee** and **Bridges** did not think it was necessary to report it to anyone or to take any action at all to protect Dr. **Grist.**

66. After this, Dr. **Grist** was also prescribed a prescription medication contraindicated for the elderly with dementia. While it is important to note that Dr. **Grist** was only 73 years old when all of this began and was not suffering from dementia, by the time two years had passed under the care of Defendant **Collaborators Parsons** and **Browning**, in which he had been overmedicated repeatedly, physically abused, sexually abused and kept a prisoner in his own home, Dr. **Grist** was a shell of the man he once was.

67. By June and July of 2022, Dr. **Grist** was suffering from trauma and medication induced dementia. Plaintiff Stacey **Grist** continued to fight to get Dr. **Grist** away from the abuse by Defendant **Collaborators,** but not in time. Defendant **Collaborator** Tracy **Parsons** took Dr. **Grist** to the doctor claiming aggressiveness and wanting further sedation for him, a fact that was not supported by caregiver notes at the time. The doctor complied with the wishes of Defendant **Collaborator** Tracy **Parsons** and prescribed a medication that was the final nail. Dr. **Grist** became lethargic, and his immune system plummeted. He was hospitalized by Defendant **Collaborator** Tracy **Parsons**, resulting in the hospital giving him another

medication contraindicated to his current medications, and, upon information and belief, the combination resulted in permanent brain damage.

68. The improperly filed conservatorship and guardianship proceedings, in which **Defendant Collaborators** participated as part of the **Sham Probate Proceedings** have resulted in Dr. **Grist** being exposed to some of the most inhumane mental, physical, and sexual abuse one could imagine.

## VI.    SUMMARY OF SHAM PROBATE  ENTERPRISE
(Scheme to Deceive and Defraud)

69. The purpose was to engage in a "pattern of racketeering activity" under 18 U.S.C.  §1961(5) by repeated violations of 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud). The purpose was to continue the scheme to defraud through extortion (under South Carolina laws) by threats and sham lawsuits in order to intimidate Plaintiffs' counsel into giving up their representation of Plaintiffs, thereby further robbing them of the right to the peaceful enjoyment of their property.

70. Membership of Scheme to Defraud  Management:  All phases of the scheme and membership in all phases of the Scheme to Defraud include all Defendants:   Jennifer **Browning, Browning Geriatric Consulting, LLC**, Tracy **Parsons**, Priscilla Mickie **Grist**, Christopher **Couchell, Kiki's Care**, LLC d/b/a **Comfort Keepers**, Tyler **McLeod**, Adam Lee, Michael **Bridges**, Dan **Collins**, **The Vanguard Group, Inc**., Cheryl **Borum**, O'Neil **Rabon**, Caroline York Grist **Lyon**, Leland **Lyon,** Jr. and Clayton **Jennings**.

71. Victims of the **Sham Probate Enterprise** are the Plaintiffs, Stanford W. **Grist**, individually, by and through his attorney-in-fact, Stacey **Grist**, and Stacey **Grist**, individually, the public as a whole and the state court judicial system.

72. <u>Timeframe of the Scheme to Defraud</u>:  The timeframe was from at least 2019, but the Trust documents were executed in 2005.  The "pattern of racketeering activity" was through its persistence, similarity, duration of the regular way of doing business with respect to the Plaintiffs and others that, by information and belief, they have victimized.  The **Sham Probate Enterprise** continues through the present by way of Defendant **Collaborators'** recent extortion attempts in filing lawsuits against Plaintiffs' counsel in an effort to separate Plaintiffs' counsel from their Clients by intimidating Plaintiffs' counsel, thereby demonstrating both closed and open continuity.

## VII.    DEFINITIONS

### A.    Unlawful Activity

73. The **RICO** Defendants ("Defendant **Collaborators**") engaged in a "pattern" of "racketeering activity within the meaning of 18 U.S.C. § 1961(5) including fraud under 18 U.S.C. § 1341 and extortion under South Carolina law (S.C. Code §16-17-640).

#### 1.    Mail and Wire Fraud – 18 U.S.C. §§ 1341 and 1343

74. The Defendant **Collaborators** used the South Carolina Court system to implement the Scheme to Defraud through trickery, deceit and overreaching.  In furtherance of the **Sham Probate Enterprise** the U.S. mails and interstate wires were used to file pleadings and to otherwise communicate so as to maintain the ruse that it was business as usual among the Defendant **Collaborators** rather than the actions of an association-in-fact enterprise.

#### 2.    Extortion – S.C. Code § 16-17-640

75. On May 17, 2024, Plaintiffs' counsel sent a notice letter to the Defendant **Collaborators** to alert them of the need to discuss the issues involved herein and obtain information which might be helpful to all parties involved.  In a reactionary but ill-informed action, certain

Defendant **Collaborators** threatened Plaintiffs' counsel while a few actually sued Plaintiffs' counsel for vigorously advocating the rights of their clients.[4] By information and belief, all Defendant **Collaborators** conferred and conspired in this regard, but, if not, are jointly and severally liable for having committed extortion which is a RICO predicate act. In continuation of their duplicitous conduct, Defendant **Collaborators** sent process servers to harass household employees of counsel Paul H. Hulsey and Cherie Durand late at night at their residence in Arizona when they positively know under South Carolina law only personal service is appropriate and binding. This vindictive and inappropriate conduct is further evidence of their conducting themselves as racketeers.

### B. Pattern

76.  These "racketeering activities" constitute a pattern of racketeering activity within 18 U.S.C. § 1961(5). The Defendant **Collaborators**' conduct reflects "relationship" and "continuity."

77.  The pattern also included collaborating to suborn testimony concerning the manner in which Dr. **Grist** was cared for and his related mental status, collaborating to conceal exculpatory evidence, collaborating to create false mental health claims, making false statements and baseless arguments to judicial authorities and misrepresenting the true nature of Dr. **Grist's** intentions, his health and the status of the relevant Trusts. The pattern included the creation of multiple and complicated bank and property transfers in order to unobtrusively and under false pretenses remove all title and ownership of such properties from Dr. **Grist.** By information and belief, this pattern of conduct had occurred prior to and after the respective

---

[4] At present, Plaintiffs' counsel have been named as Defendants in a total of five (5) separate lawsuits filed by Defendant **Collaborators** involved in this case and several others demonstrating overt attempts to intimidate Plaintiffs' counsel. This extortion is unbelievable. Other clients of Plaintiffs' counsel have also been sued, having dramatic and horrific efforts to serve legal process upon them.

fraud upon Dr. **Grist.**  The pattern included collaborating upon a plan and conspiracy related thereto by using the U.S. mails and extortionary threats to Plaintiffs' counsel and for some selected co-conspirators of the named Defendant **Collaborators**.

78. The "racketeering activities" are related because they had a similar *purpose or goal*, to hide the true status of the Plaintiff Dr. **Grist's** health so as to deprive him of his assets and financial status and to nullify the exquisite steps he took with advice of counsel to avoid just what other Defendant **Collaborators**, including the named attorneys herein, and others perpetrated upon him.  All Defendant **Collaborators** in one manner or another obtained their ill-gotten gains through the related activities.   The court system and the Plaintiffs were victimized by the **Sham Probate Enterprise** and Scheme to Defraud and methods of *omission* (the Scheme and racketeering acts described in this Complaint).

79.  The "racketeering acts" were otherwise interrelated by their distinguishing characteristics and are not isolated events because they were carried out for the same purpose in a continuous manner through a relevant period of time.  The conduct of the **Sham Probate Enterprise** and Scheme to Defraud had an effect upon interstate commerce in that the stocks that were converted were traded and valued nationally, certain **Collaborator** businesses are organized under the laws of states outside South Carolina and/or do business outside the state of South Carolina, the business was operated by Defendant **Collaborators**  in violation of IRS tax laws and regulations and the law firms which commonly communicate and trade in interstate commerce.

## **FIRST CLAIM FOR RELIEF**
(Violation of 18 U.S.C. § 1962(c)
Against All Defendant **Collaborators**)

80. Plaintiffs incorporate and reallege all of the allegations contained in the proceeding paragraphs.

81.  18 U.S.C. § 1962(c) provides:

31

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity….

82. Plaintiffs are a "person" within 18 U.S.C. §§ 1961(3) and 1964(c) and "capable of holding a legal or beneficial interest in property, and were injured by reason of the "racketeering activity" within 18 U.S.C. 1961(1).

83. Each of the Defendant **Collaborators** is a "person" under 18 U.S.C. §§ 1961(3) and 1962(c) and is "capable of holding legal or beneficial interest in the property."

84. The **Sham Probate Enterprise** is an "enterprise" within 18 U.S.C. §§ 1964(4) and 1962(c) that was engaged in, and the activities of which affected interstate commerce within 18 U.S.C. §§ 1961(4), 1962(c). The Scheme to Defraud had an effect on interstate commerce as described above.

85. Each of the Defendant **Collaborators** was employed by or associated with, or participated in the affairs of the **Sham Probate Enterprise** and they conducted and participated, directly or indirectly, in the management and operation of the affairs of the **Sham Probate Enterprise** and through a "pattern of racketeering activity" within 18 U.S.C. §§ 1961(1) and (5) and 1962(c), to wit" multiple, repeated and continuous violations of 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. §1943 (wire fraud) and multiple violations of S.C. Code § 16-17-640 (extortion).

86. Plaintiffs suffered (and will continue to suffer) substantial injury to their "business and property" by reason of the violations of 18 U.S.C. § 1962(c) committed by Defendant **Collaborators**. All of Plaintiffs' damages were anticipated as a substantial factor and natural consequence of their pattern of "racketeering activity."

32

**SECOND CLAIM FOR RELIEF**
(Violations of 18 U.S.C. § 1962(d), Conspiracy to Violate § 1962(c)
Against all Defendant **Collaborators**)

87. Plaintiffs incorporate and reallege all of the allegations contained in the preceding paragraphs.

88. 18 U.S.C. § 1962(d) provides:

> It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

89. Plaintiffs were a "person" under 18 U.S.C. §§ 1961(3) and 1964(c), were "capable of holding a legal or beneficial interest in property," and were injured by reason of the "racketeering activity within 18 U.S.C. § 1961(1) of the Defendant **Collaborators**.

90. Each of the Defendant **Collaborator** is a "person" under 18 U.S.C. §§ 1961(3) and 1962(c) and (d), and each is an "entity capable of holding a legal or beneficial interest in property."

91. The **Sham Probate Enterprise** constitutes an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) that was engaged in, and the activities of which affected, interstate commerce. The Defendant **Collaborators** were employed by or associated with the management and operation of the affairs of the **Sham Probate Enterprise**.

92. The Defendant **Collaborators** conspired among themselves within 18 U.S.C. § 1962(d) to conduct, operate and manage the affairs of the **Sham Probate Enterprise**, directly or indirectly, by engaging in a "pattern of racketeering activity" within 18 U.S.C. § 1961(1) in violation of 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), and S.C. Code § 16-17-640 (extortion).

93. The Defendant **Collaborators** acted knowing that these "racketeering activities" within 18 U.S.C. §§ 1961(1) and 1962(c) would proximately and directly cause Plaintiffs to suffer

damages to their "business and property" within 18 U.S.C. § 1964(c). All of Plaintiffs' damages were reasonably foreseeable by the Defendant **Collaborators** and were anticipated as a substantial factor and a natural consequence of their pattern of "racketeering activity" within 18 U.S.C. 1961(1).

### THIRD CLAIM FOR RELIEF
(Violation of 18 U.S.C. § 1962(d) Conspiracy to Violate § 1962(a)
Against Defendant **Collaborators** Collins, Browning, Browning Geriatric Consulting, LLC,
The Vanguard Group, Inc., Kiki's Kare, LLC d/b/a Comfort Keepers
and O'Neil Rabon)

94. Plaintiffs incorporate and reallege all of the allegations contained in the preceding paragraphs.

95. 18 U.S.C. § 1962(a) provides:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

96. 18 U.S.C. § 1962(d) provides:

> It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section.

97. Plaintiffs are each a "person" under 18 U.S.C. §§ 1961(3) and 1964(c), each "capable of holding a legal or beneficial interest in property," and were injured by reason of the "racketeering activity" within 18 U.S.C. § 1961(1) of the Defendant **Collaborators**.

98. Each of the Defendant **Collaborators** is a "person" under 18 U.S.C. §§ 1961(3) and 1962(a) and (d) and is "capable of holding a legal or beneficial interest in property."

34

99.  The **Sham Probate Enterprise** constituted an "enterprise" within 18 U.S.C. §§ 1961(4) and 1962(a) that was engaged in, and the activities of which affected, interstate commerce.

100. The Defendant **Collaborators** conspired among themselves within 18 U.S.C. § 1962(d) to violate § 1962(a), to wit, the Defendant **Collaborators** conspired among themselves to establish and operate, and use and invest income, or the proceeds of income, from a "pattern of racketeering activity" within 18 U.S.C. § 1961(5) in which the Defendant **Collaborators** participated as principals within 18 U.S.C. §§ 1961(1), 1961(5), 1962(a) and (d), to wit: multiple, repeated, and continuous violations of 18 U.S.C. §1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), and S.C. Code § 16-17-640 (extortion).

101. The Defendant **Collaborators**' conspiracy was and is that income, or the proceeds of income, from "racketeering activity" within 18 U.S.C. § 1961(1) received by the Defendant **Collaborators** would be invested in or used in the establishment and operation of the **Sham Probate Enterprise**.

102. The Defendant **Collaborators** acted knowing that these "racketeering activities" within 18 U.S.C. §§ 1961(1), 1962(a) would proximately and directly cause Plaintiffs to suffer damages to their "business and property" within 18 U.S.C. § 1964(c). All of Plaintiffs' damages were reasonably foreseeable by the Defendant **Collaborators** and were anticipated as a substantial factor and a natural consequence of their pattern of "racketeering activity" within 18 U.S.C. § 1961(1).

## FOURTH CLAIM FOR RELIEF
(Tortious Interference with the Right to Inherit)

103. The Plaintiffs incorporate and reallege all of the allegations contained in the preceding paragraphs.

35

104. At all times material herein, the Plaintiff Stanford W. **Grist** had taken exquisite efforts to ensure that the fruits of his decades of labor, his estate through his succession plan as meticulously described in his Revocable Trust.  He made his intentions perfectly clear as he executed his Trust in 2005 and, more particularly, as he amended his Durable Power of Attorney (the "POA") on May 1, 2019, to reflect his desire that his daughter, Plaintiff Stacey **Grist,** serve as his attorney-in-fact upon his incapacity (the springing powers defined in the POA).  The Durable Power of Attorney, Article IX, Section 3, specifically nominated her "agent as conservator and Guardian Principal."  He nominated her to serve as his "Guardian, conservator, and/in or in any similar representational capacity, if such an appointment is necessary."

105. On May 13, 2020, Dr. **Grist** amended his Trust concerning how it should be distributed upon his death, while leaving all other provisions, including the appointment of Plaintiff Stay Grist as his successor trustee in place.

106. The 2020 amendment took away any ownership Mickie Grist, who originally received equal shares *per stirpes* had in Stanford Grist Veterinary Services, LLC, Chestnut Ridge Farm, LLC and Hilly Strut, LLC (the companies).  It left Defendant **Collaborator** Priscilla Mickie **Grist** all the stocks and bonds held in the Trust.  The companies were split between Plaintiff Stacey **Grist** and Charlotte **Grist.**  After learning of such changes, Defendant **Collaborator** Priscilla Mickie **Grist** submitted her resignation as Healthcare Power of Attorney for the reason that she "no longer wanted this responsibility."

107. Thereafter, the Defendant **Collaborators** Priscilla Mickie **Grist** and Caroline **Grist**, with the aid and assistance of other Defendant **Collaborators** to the other three causes of action set forth on an elaborate ruse and scheme designed to gain control over the Trust assets of

Plaintiff Stanford W. **Grist** and disenfranchise Plaintiff Stacey **Grist** from her lawful interest in such Trust assets.

108. The manner and method of such tortious interference with the right of Plaintiff Stacey **Grist** to inherit her lawful share of such Trust assets as more fully described in detail in facts and circumstances previously alleged and stated in the body of this document.

109. The scheme employed by Defendant **Collaborators** Priscilla Mickie **Grist** and Caroline **Grist** as aided and abetted by the other Defendant **Collaborators** already addressed herein also tortiously interfered with the rights of Plaintiff Stanford W. **Grist** to determine the manner in which he desired for his estate to be distributed upon his death.

110. In order to effectuate the scheme to interfere with their lawful rights to (bequeath and) inherit, Defendants subjected Dr. **Grist** to extreme mental and emotional distress, attempted to destroy his mental capacity through the needless prescription medication and overmedicating against his will.

111. That the actions described herein subjected Plaintiff Stacey **Grist** to extreme mental and emotional distress as she struggled both with the wrongs that had been perpetrated against Dr. **Grist** as well as her attempts to remedy them.

112. As a direct and proximate result of the Defendant **Collaborators'** wrongful acts, tortious interference with their right to bequeath and inherit, the Plaintiff Stacey **Grist** has suffered economic damages including, but not limited to, loss of her economic benefits specified in the Trust documents, attorneys' fees and such other relief as the Court deems just and equitable.

113. As a direct and proximate result of the wrongful acts of the Defendant **Collaborators** as described herein, both Plaintiffs have sustained significant mental and emotional distress and as such are entitled to punitive damages as well as recovery of all costs incurred herein.

### FIFTH CLAIM FOR RELIEF
(Civil Conspiracy)

114. The Plaintiffs incorporate and reallege all of the allegations contained in the preceding paragraphs.

115. The Defendant **Collaborators** herein had a business interest in seeing that they were employed by, appointed as or hired to become involved in as many estates as possible, noticeably those Trusts and Estates with significant assets able to sustain prolonged and multiple fees billed by these entities.

116. The Defendant **Collaborators**, one with the other, conspired to solicit and prolong the administration of their business appointment, employment or activities providing extended and many times questionable healthcare and administrative services to these economically blessed and therefore vulnerable individuals.

117. In order to benefit and profit from such conspiratorial conduct, the Defendant **Collaborators** endeavored to see that the same providers, attorneys or guardian ad litem were appointed or selected to act in each case. In this manner, they could control the assets of the relevant Trust or assets of the individual dealing the profits and ill-gotten gains out amongst themselves.

118. As a direct and proximate result of Defendant **Collaborators'** civil conspiracy, Plaintiffs were caused economic harm, suffered substandard and harmful healthcare as well as incurring significant attorneys' fees and costs.

## SIXTH CLAIM FOR RELIEF
(Fraud Against
All Defendant **Collaborators**)

119. The Plaintiffs incorporate and reallege all of the allegations contained in the preceding paragraphs.

120. The Defendant **Collaborators** conspired among themselves and with others to commit and did commit fraud in the manner and method they created extremely complicated bank transfers in order to fraudulently conceal the manipulation of the Trust assets from Plaintiff Stacey **Grist** to others.

121. The Defendant **Collaborators** fraudulently misrepresented the actual health status of Plaintiff Stanford W. **Grist** to the Probate court in order to keep him under their and their designee's control with the self-intent of prolonging their fees and increasing their ill-gotten gains.  In doing so, they falsified records, suborned perjury and submitted Plaintiff Dr. **Grist** to unnecessary and harmful healthcare procedures.

122. The Defendant **Collaborators** fraudulently misrepresented the facts and circumstances of the Plaintiff Stanford W. **Grist**, his Trust and his physical and mental status to the Probate Court for their own self-interest and personal gain.

123. As a direct and proximate result of Defendant **Collaborators**' fraudulent conduct, Plaintiffs incurred significant economic damages, including attorneys' fees and costs.

## SEVENTH CLAIM FOR RELIEF
(Negligent Misrepresentation)

124. The Plaintiffs incorporate and reallege all of the allegations contained in the preceding paragraphs.

125. The Defendant **Collaborators** made false representations concerning the nature and extent of Plaintiff Stanford W. **Grist**'s personal health status and the representations were relied upon to his detriment.

126. The Defendant **Collaborators** made false representations about the status of Dr. **Grist**'s Trust and created false documents, all of which were relied upon by others to their detriment.

127. The Defendant **Collaborators** had a pecuniary interest in making such representations and owed a duty of care to see that they communicated truthful information.  The Defendant **Collaborators** breached their duty in all respects by failing to exercise due care.  The Plaintiff Stacey **Grist** did not know at the time concerning the circumstances under which the Defendant **Collaborators** maneuvered her and Dr. **Grist** into and as such she was forced to rely on the misrepresentation and act in a manner to her detriment that she would not have done had such statements and representations not have been made.

128. As a direct and proximate result of Defendant **Collaborators'** wrongful acts, Plaintiff Stanford W. **Grist** was caused to sustain substantial financial loss and to undergo substantial and harmful healthcare resulting in significant mental and emotional distress.  The Plaintiff Stacey **Grist** suffered economic damages and incurred attorneys' fees and costs as well as suffered mental and emotional distress as a result of Defendant **Collaborators'** wrongful conduct.

## VIII.   DEMAND FOR JURY TRIAL

129. Plaintiffs hereby demand a jury trial on all causes of action.

## IX.    PRAYER FOR RELIEF

WHEREFORE and by reason of the above and foregoing, Plaintiffs pray for judgment, jointly and severally, against the Defendant **Collaborators** as follows:

a.   Awarding Plaintiffs actual damages, treble damages and punitive damages and prejudgment interest as a result of the wrongful conduct complained of herein;

b.   Awarding injunctive relief prohibiting Defendant **Collaborators** from continuing to engage in the illegal practices described herein in this and other similar circumstances;

c.   Awarding Plaintiffs their attorneys' fees for having to file this lawsuit to enforce their undeniable rights, as well as costs incurred therein, including expert fees and expenses;

d.   Requiring Defendant **Collaborators** to provide an accounting to Plaintiffs and to disgorge all ill-gotten gains for which they were unjustly enriched; and

e.   Awarding Plaintiffs such other and further relief as the Court may deem just and equitable.

[signature blocks next page]

41

Respectfully submitted,


**HULSEY LAW GROUP**                          **TRULUCK THOMASON, LLC**

 _/s/Paul H. Hulsey_                           _/s/ Kimberly Thomason_
Paul H. Hulsey (ID# 9325)                     Kimberly Thomason (ID# 11331)
Cherie Durand (ID# 10232)                     Devon Puriefoy (ID #12461)
1156 Bowman Road, Suite 200                   3 Boyce Avenue
Mount Pleasant, SC 29464                      Greenville, SC 29601
T: 843.723.5303                               T: 864.331.1751
F: 843.723.5307                               kim@truluckthomason.com
phulsey@hulseylawgroup.com                    devon@truluckthomason.com
cdurand@hulseylawgroup.com


**BALLARD & WATSON**

 _/s/Desa Ballard_
Desa Ballard (ID# 1179)
Harvey M. Watson III (ID# 9721)
Haley Hubbard (ID# 13863)
226 State Street
West Columbia, SC 29169
T: 803.796.9299
F: 803.796.1066
desab@desaballard.com
harvey@desaballard.com
haley@desaballard.com


July 3, 2024


42